# PRIORITY SEND

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   EDCV 13-01044-VAP (OPx)                    Date:  September 13, 2013

Title:     KIANA SHANTE JOHNSON AKN KIANA SHANTE MAXWELL -*v*-
           WELLS FARGO HOME MORTGAGE, INC., DBA AMERICA'S
           SERVICING COMPANY; TRANS UNION, LLC; EQUIFAX
           INFORMATION SERVICES, LLC; EXPERIAN INFORMATION
           SOLUTIONS, INC.; AND DOES 1 TO 10, INCLUSIVE

===============================================================

PRESENT:        HONORABLE VIRGINIA A. PHILLIPS, U.S. DISTRICT JUDGE

          Marva Dillard
          Courtroom Deputy                              Court Reporter

ATTORNEYS PRESENT FOR                ATTORNEYS PRESENT FOR
PLAINTIFFS:                          DEFENDANTS:

          Not present                          Not present

PROCEEDINGS:        MINUTE ORDER GRANTING IN PART DEFENDANT'S
                    MOTION TO DISMISS AND REQUEST FOR JUDICIAL
                    NOTICE (IN CHAMBERS)

     Before the Court is a Motion to Dismiss ("Motion" or "Mot.") filed by Defendant
Wells Fargo Bank ("Wells Fargo") ("Defendant").  (Doc. No. 14.)  Defendant also
filed a Request for Judicial Notice in Support of Motion to Dismiss.  (Doc. No. 14-1.)
The matter came before the Court for hearing on September 9, 2013.  The Court
considered all papers filed in support of, and in opposition to, the motion, and the
arguments put forth at the hearing, and for the reasons set forth below, the Court
GRANTS the Motion IN PART.

EDCV 13-01044-VAP (OPx)
KIANA SHANTE JOHNSON AKN KIANA SHANTE MAXWELL v. WELLS FARGO HOME MORTGAGE, INC., ET AL.
MINUTE ORDER of September 13, 2013

# I. BACKGROUND

## A.    Factual Allegations

In March 2006, Plaintiff Kiana Shante Johnson purchased real property located at 10102 Faywood St., Bellflower, California 90706.  (Compl. ¶ 16.)  Plaintiff purchased the single family residence with two loans from Defendant, Wells Fargo Bank ("Wells Fargo") ("Defendant").[1]  (Compl. ¶ 17.)  The first loan was in the amount of $463,200 and secured by a Deed of Trust in favor of Wells Fargo.  (Deed of Trust, Ex. B to Mot.)  The second loan was in the amount of $115,800 and secured by a second Deed of Trust, also in favor of Wells Fargo.  (Deed of Trust, Ex. C to Mot.)  Both mortgages were serviced by Wells Fargo.  (Compl. ¶ 17.)

On May 7, 2007, after Plaintiff stopped making monthly payments on both loans, Defendant initiated non-judicial foreclosure proceedings.  (Compl. ¶ 18, Notice of Default and Election to Sell Under Deed of Trust, Ex. D to Mot.)  The property was sold in a Trustee's Sale on October 11, 2007.  (Compl. ¶ 18, Trustee's Deed Upon Sale, Ex. F to Mot.)  Defendant concedes that for the purpose of this Motion, "it cannot legally pursue a deficiency judgment for the amount owed on the Second Loan or initiate collection activity."  (Mot. at 5.)

In 2008, Plaintiff discovered Defendant was reporting to three national credit reporting agencies, Trans Union, LLC ("Trans Union"), Equifax Information Services, LLC ("Equifax"), and Experian Information Solutions, Inc. ("Experian") (collectively, "credit reporting agencies"), that she owed a balance of $115,321 on the second mortgage.  Plaintiff disputed the reporting of this information with Defendant and the credit reporting agencies ("CRAs"), but Defendant continued to report the balance. (Compl. ¶¶ 20-21.)  In April 2013, Plaintiff again sent letters to the CRAs formally disputing the inclusion of the balance on her credit report.  (Compl. ¶ 27.)  The CRAs each conducted a formal investigation that concluded in May 2013.  (Compl. ¶¶ 29-30.)  After concluding the investigation the CRAs continued to include the balance in Plaintiff's credit report.  (Compl. ¶¶ 30-31.)

---

[1]Wells Fargo Bank was erroneously sued as "Wells Fargo Home Mortgage, Inc. dba America's Servicing Company."

EDCV 13-01044-VAP (OPx)
KIANA SHANTE JOHNSON AKN KIANA SHANTE MAXWELL v. WELLS FARGO HOME MORTGAGE, INC., ET AL.
MINUTE ORDER of September 13, 2013

Plaintiff claims that as a result of the reporting of the debt on her credit reports she has suffered a decreased credit score. (Compl. ¶¶ 38-39.) Consequently, Plaintiff was denied the ability to buy a new automobile, denied credit by various agencies, lost the opportunity to refinance her rental residence at a lower interest rate, and was denied a lower rental rate offered to renters with good credit. (Compl. ¶¶ 32-36.) In addition, she suffered physical and emotional pain and anguish. (Compl. ¶ 37.)

## B.   Procedural Background

On June 11, 2013, Plaintiff filed a Complaint against Defendants Wells Fargo, Trans Union, Equifax, and Experian. ("Compl.") (Doc. No. 1.) Plaintiff claims Defendant violated the Fair Credit Reporting Act ("FCRA") by willfully and negligently failing to conduct an investigation of the disputed information; failing to review all relevant information Plaintiff provided; failing to report the results of the investigation to relevant CRAs; failing to participate, investigate and comply with the re-investigations conducted by the CRAs concerning the disputed information; continuing to furnish and disseminate inaccurate information to CRAs; and failing to comply with the requirements imposed on furnishers of information under the FCRA. (Compl. ¶ 44.); see 15 U.S.C. § 1681s-2(b). Plaintiff also claims Defendant violated the California Consumer Credit Reporting Agencies Act ("CCRAA") by willfully and negligently furnishing information to CRAs Defendant knew or should have known was inaccurate. (Compl. ¶ 51.); see Cal. Civ. Code § 1785.25(a)-(c).[2]

Plaintiff seeks remedies under both the FCRA and the CCRAA. Under the FCRA, Plaintiff claims statutory, actual, and punitive damages and attorneys' fees and costs. (Compl. ¶ 46.); see 15. U.S.C. 1681n. Under the CCRAA, Plaintiff claims entitlement to "actual damages, attorneys' fees, injunctive relief, and punitive damages in an amount not less that $100 nor more than $5,000 for each violation." (Compl. ¶ 52.); see Cal. Civ. Code § 1785.31.

---

[2]Plaintiff also claims the CRAs violated the FCRA by inadequately reinvestigating the disputed information. As this claim is not asserted against Wells Fargo it is unaffected by the Motion. (Compl. ¶¶ 53-61.)

MINUTES FORM 11                                    Initials of Deputy Clerk __md____
CIVIL -- GEN                         Page 3

EDCV 13-01044-VAP (OPx)
KIANA SHANTE JOHNSON AKN KIANA SHANTE MAXWELL v. WELLS FARGO HOME MORTGAGE, INC., ET AL.
MINUTE ORDER of September 13, 2013

On July 10, 2013, Defendant filed a Motion to Dismiss along with a Request of Judicial Notice in Support of Motion to Dismiss. ("Motion" or "Mot.") (Doc. No. 14.) The Motion only addresses Plaintiff's claims regarding the continued reporting of debt as inaccurate or incomplete and does not discuss the claims regarding failure to investigate, review relevant information, report the results of the investigation, or properly participate in re-investigations. These claims are unaffected by Defendant's Motion. On August 19, 2013, Plaintiff filed an Opposition to Defendant's Motion to Dismiss. ("Opp'n.") (Doc. No. 15.) Defendant filed a reply to Plaintiff's Opposition to the Motion on August 26, 2013. ("Reply.") (Doc. No. 16.)

## C.    Request for Judicial Notice

On July 10, 2013, Defendant filed a Request for Judicial Notice along with the Motion to Dismiss, requesting the Court take judicial notice of the: (1) Grant Deed, recorded March 28, 2006; (2) Deed of Trust, recorded March 28, 2006; (3) Deed of Trust and Request for Notice of Default, recorded on March 28, 2006; (4) Notice of Default and Election to Sell Under Deed of Trust, recorded on May 7, 2007; (5) Notice of Trustee's Sale, recorded on August 20, 2007; (6) Trustee's Deed Upon Sale, recorded on October 16, 2007.

A court may take judicial notice of court filings and other matters of public record. See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) (citing Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank, 136 F.3d 1360, 1364 (9th Cir. 1998)). Defendant has provided instrument numbers for these documents, showing that they were in fact recorded; this demonstrates that the documents are public records. See Grant v. Aurora Loan Servs., Inc., 736 F. Supp. 2d 1257, 1264 (C.D. Cal. 2010) (collecting cases); Velazquez v. GMAC Mortg. Corp., 605 F. Supp. 2d 1049, 1057-58 (C.D. Cal. 2008). Facts subject to judicial notice may be considered on a motion to dismiss. See Mullis v. United States Bankr. Ct., 828 F.2d 1385, 1388 (9th Cir. 1987). Accordingly, the Court grants judicial notice of the documents contained in the Request for Judicial Notice.

## II. LEGAL STANDARD

MINUTES FORM 11                                          Initials of Deputy Clerk __md____
CIVIL -- GEN                          Page 4

EDCV 13-01044-VAP (OPx)
KIANA SHANTE JOHNSON AKN KIANA SHANTE MAXWELL v. WELLS FARGO HOME MORTGAGE, INC., ET AL.
MINUTE ORDER of September 13, 2013

Federal Rule of Civil Procedure 12(b)(6) allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted.  Rule 12(b)(6) is read along with Rule 8(a), which requires a short, plain statement upon which a pleading shows entitlement to relief.  Fed. R. Civ. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 47 (1957) (holding that the Federal Rules require a plaintiff to provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." (quoting Fed. R. Civ. P. 8(a)(2))); Bell Atl. Corp. v Twombly, 550 U.S. 544, 555 (2007).  When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint — as well as any reasonable inferences to be drawn from them — as true and construe them in the light most favorable to the non-moving party.  See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (citations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 556).

Recently, the Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair

MINUTES FORM 11                                          Initials of Deputy Clerk __md____
CIVIL -- GEN                            Page 5

EDCV 13-01044-VAP (OPx)
KIANA SHANTE JOHNSON AKN KIANA SHANTE MAXWELL v. WELLS FARGO HOME MORTGAGE, INC., ET AL.
MINUTE ORDER of September 13, 2013

to require the opposing party to be subjected to the expense of discovery and
continued litigation."  Starr v. Baca, 652 F. 3d 1202, 1216 (9th Cir. 2011).

## III. DISCUSSION

Defendant moves to dismiss Plaintiff's claim of inaccurate and incomplete
reporting under the FCRA and CCRAA.  (Mot. at 1.)  Plaintiff offers two theories to
support her claim that Defendant's reporting is incomplete and inaccurate.  First,
Plaintiff argues California Civil Code section 580b "extinguished" the debt owed on
the second mortgage, and therefore it is inaccurate for Defendant to report the debt
because it does not exist.  (Opp'n. at 5-9.)  Second, Plaintiff argues the reporting is
"misleading" and therefore inaccurate because a reasonable creditor looking at the
credit report would assume Plaintiff remains personally liable for the debt.  (Compl. ¶
24, Opp'n. at 1.)  Plaintiff also claims the reporting is incomplete because the debt is
reported as "past due and owed," without disclosing that a deficiency judgment on
the debt is precluded.  (Compl. ¶ 25, Opp'n. at 13-15.)

## A.     California Civil Code Section 580b

Defendant argues section 580b prohibits a mortgagee from seeking a
deficiency judgment after a non-judicial foreclosure, but does not abolish the
underlying debt.  If the debt is not eliminated by section 580b, reporting the debt is
not incomplete or inaccurate and Plaintiff failed to state a claim upon which relief
may be granted.  (Mot. at 3.)

Plaintiff asserts section 580b extinguishes not only the personal liability of the
mortgager, but the debt itself.  (Opp'n. at 9.)  Thus, reporting the debt to CRAs is
inaccurate because the debt no longer exists.  (Opp'n. at 9.)  Plaintiff further asserts
that even if section 580b as currently written does not extinguish the debt, the Court
should interpret the law in light of the recent passage of California Senate Bill 426
("S.B. 426"), which amends the language in section 580b and will take effect on
January 1, 2014.  (Opp'n. at 7-9.)  Plaintiff claims S.B. 426 was passed with the
intent to make clear that section 580b extinguishes the underlying debt.  (Opp'n. at
7-8.)

California Civil Code Section 580b was originally enacted in 1933.  Brown v.
Jensen, 41 Cal. 2d 193, 198 (1953).  A deficiency judgment is "a personal judgment

MINUTES FORM 11                                    Initials of Deputy Clerk __md____
CIVIL -- GEN                        Page 6

against the debtor-mortgagor for the difference between the fair market value of the property held as security and the outstanding indebtedness." Cornelison v. Kornblush, 15 Cal. 3d 590, 603 (1975).  The statute provides anti-deficiency protection for purchase money mortgagers.  Section 580b(a)(2) states in relevant part: "No deficiency judgment shall lie in any event for the following: . . . (2) Under a deed of trust or mortgage given to the vendor to secure payment of the balance of the purchase price of that real property or estate for years threatening."  Cal. Civ. Code. § 580b(a)(2).

Interpretation of section 580b begins with the plain language of the statute. Jeffries v. Wood, 114 F.3d 1484, 1495 (9th Cir. 1997).  The plain language of the statute only removes the possibility of a deficiency judgment against the mortgager. "The statute says nothing about the consequences of that bar or the ultimate status of the debt. Had it sought to extinguish the debt entirely, the California legislature could have said as much; by the explicit terms of the statute, section 580b only bars deficiency judgments."  Herrera v. LCS Fin. Servs. Corp., 2009 WL 2912517, at *4 (N.D. Cal. Sept. 9, 2009); see also  Abdelfattah v. Carrington Mortgage Services, LLC, 2013 WL 495358, at * 2 (N.D. Cal. Feb. 7, 2013) (interpreting section 580d) ("Section 580d makes no reference to the way a furnisher . . . may or may not report a deficiency to a credit reporting agency.")  The statute's plain language supports Defendant's interpretation, i.e., the statute eliminates the mortgager's personal liability, but does not extinguish the underlying debt.  See Herrera, 2009 WL 2912517, at *4; Vargas v. Bank of America, 2013 WL 1386342, at *4 (S.D. Cal. Apr. 4, 2013).

Plaintiff asserts that although not expressed in the plain language of section 580b, case law supports "the proposition that the underlying debt on a sold out junior lien is obliterated."  (Opp'n. at 9.)  In interpreting section 580b, this Court is bound by the decisions of the California Supreme Court.  Arizona Elec. Power Co-op., Inc. v. Berkeley, 59 F.3d 988, 991 (9th Cir. 1995).  "In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance."  Id. (citing In re Kirkland, 915 F.2d 1236, 1239 (9th Cir. 1990)).

Plaintiff cites no California authority holding section 580b eliminates the underlying debt after a non-judicial foreclosure.  Plaintiff cites an Arizona Supreme Court case interpreting section 580b as a substantive rule that "does not simply govern applicable procedures, it obliterates the debtor's liability."  Catchpole v. Narramore, 102 Ariz. 248, 251 (1967); (see Opp'n. at 9.).  This case, however, only refers to the obliteration of the "debtor's *liability*," not the debt itself.  Catchpole, 428 P.2d at 108 (emphasis added).  Furthermore, as an Arizona Supreme Court case, it is not binding on this Court and carries little persuasive authority.  See Arizona Elec. Power Co-op., 59 F.3d at 991.

Plaintiff also cites to California Court of Appeal cases, but these cases do not hold that section 580b eliminates the *debt*, rather than the *personal liability* of the mortgager.  (Opp'n. at 9-10.)  Plaintiff erroneously assumes in her briefing that a debt cannot exist where personal liability has been eliminated.  (Opp'n. at 9.) ("There is simply no liability, and no debt.")

In Brown v. Jensen, the California Supreme Court affirmed that under section 580b, "the security alone can be looked to for recovery of the debt" secured by a purchase money mortgage or deed of trust and that "in no event shall there be a deficiency judgment."  Brown, 41 Cal. 2d at 198.  The court does not address what effect section 580b has on the existence of the underlying debt.  See Herrera, 2009 WL 2912517, at *7 ("If the security is exhausted, it does not mean that the debt ceases to exist—it means only that the debt is unrecoverable because there can be no deficiency judgment against the debtor.")  Similarly, in Stone v. Lobsien, the California Court of Appeal held that under section 580b, "there is no *personal liability* imposed on the vendee of a purchase money deed of trust," but did not address whether the existence of the underlying debt was affected.  112 Cal. App. 2d 750, 755 (1952) (emphasis added).

Finally, Plaintiff cites to Yossa v. Countrywide Home Loans Inc., an Eastern District of California opinion distinguishing the act of foreclosing on a property based on a deed of trust from the type of debt collection covered under the Federal Debt Collection Practices Act ("FDCPA").  Yossa v. Countrywide Home Loans, Inc., 2012 WL 761991, at *4 (E.D. Cal. Mar. 7, 2012) (report and recommendation adopted, 2012 WL 1833884 (E.D. Cal. May 18, 2012)).  Although the opinion states, "With

exceptions not applicable here, a lender/trustee may *not* seek a deficiency judgment when foreclosing on a property in a non-judicial trustee foreclosure/sale. Thus in California a debt derived from the residential loan transaction does not exist after a non-judicial foreclosure," it is apparent from the context of the statement that "debt" actually refers to the existence of personal liability.  See id.  Furthermore, Yossa was decided in relation to the applicability of FDCPA to foreclosure, and does not purport to interpret or analyze section 580b.

In contrast to Plaintiff's assertions, the California Court of Appeal has observed that the debtor-creditor relationship continues after non-judicial foreclosure under section 580b.  See Mortgage Guarantee Co. v. Sampsell, 51 Cal. App. 2d 180, 185 (1942) ("our [California] statutes do not even purport to wipe out the debt, but only to apply in the contingency that a deficiency judgment is sought."); Redingler v. Imperial Sav. & Loan Assn., 47 Cal. App. 3d 48, 50 (1975)("the debtor-creditor relationship between the parties was not totally extinguished during foreclosure proceedings").  In addition, the Northern and Southern Districts of California held section 580b does not extinguish the underlying debt.  Herrera, 2009 WL 2912517, at *8 ("the claim that section 580b erases the debt . . . must fail as a matter of law."); Vargas, 2013 WL 1386342, at *4 ("Section 580b does not erase Plaintiff's debt.") (citing to Herrera, 2009 WL 2912517, at *8).  Accordingly, the authority on point supports Defendant's interpretation of section 580b as precluding a deficiency judgment, but not erasing or eliminating the underlying debt.

Plaintiff urges the Court to look beyond the plain language of the statute and consider the legislative intent behind section 580b.  Statutes "should be interpreted to promote rather than defeat the legislative purpose and policy."  Freedland v. Greco, 45 Cal. 2d 462, 468 (1955).  In particular, Plaintiff urges consideration of the recent passage of S.B. 426 amending the language in section 580b.  (Opp'n. at 5-9.)

The rationale behind section 580b is twofold: preventing overvaluation and the aggravation of a downturn in real property values during a depression.  Herrera, 2009 WL 2912517, at *3-4.  First, section 580b "stabilizes purchase money secured land sales by keeping the vendor from overvaluing the property and by suggesting to the purchaser its true value."  DeBerard Properties, Ltd. v. Lim, 20 Cal. 4th 659, 664

(1999).  Second, if the security on the property is inadequate due to a decline in property values during a depression, the law "prevents the aggravation of the downturn that would result if defaulting purchasers were burdened with large personal liability."  Roseleaf Corp. v. Chierighino, 59 Cal. 2d 35, 43 (1963).  As the Northern District of California held in Herrera, interpreting section 580b as eliminating personal liability, but not extinguishing the underlying debt, is consistent with the law's dual purposes.  2009 WL 2912517, at *4.  "The fact that a debtor could theoretically choose to voluntarily pay off an obligation on which a deficiency judgment is unavailable will not give creditors any more incentive to overvalue property.  Likewise, a downturn is unlikely to be aggravated if mortgagors who have the means to pay off the debt choose to do so."  Id.

Furthermore, to preclude reporting of a deficiency may be at odds with the purpose of a credit report, which is to provide accurate credit information to potential creditors.  See Abdelfattah, 2013 WL 495358, at *2.  "Although a deficiency may not be reducible to a judgment or even collectible, it does show that the debtor did not fully pay the balance due on his debt."  Id.

Plaintiff points to the recent passage of S.B. 426 as evidence the California Legislature intended section 580b to prohibit reporting of debt that cannot be collected through a deficiency judgment.  (Opp'n. at 7.)  S.B. 426 was signed into law by Governor Brown on July 11, 2013 and amends the language in section 580b to prohibit a "deficiency from being owed or collected."  S.B. 426, 2013 S. 2013-14 Sess. (Cal. 2013).  During the Assembly Floor Analysis, it was stated the Bill "seeks to clarify that where a statute prohibits a deficiency judgment, the underlying debt is effectively extinguished and, as such, is no longer owed and cannot be collected."  Assembly Floor Analysis on S.B. 426, 2013 S. 2013-14 Sess. (June 19, 2013) (Cal. 2013).  In addition, supporters of the legislation stated the amendment was made in the "hope that by clarifying that 'no debt is owed' after non-judicial foreclosure after a purchase money foreclosure, that reporting a deficiency as a debt would violate the law against reporting incomplete or inaccurate information."  Id.  Although Plaintiff's arguments are persuasive as to the legislative intent behind S.B. 426, the fact that an amendment was needed to change the law supports Defendant's assertion that the current text of section 580b does not extinguish the underlying debt or prohibit reporting of the debt.

EDCV 13-01044-VAP (OPx)
KIANA SHANTE JOHNSON AKN KIANA SHANTE MAXWELL v. WELLS FARGO HOME MORTGAGE, INC., ET AL.
MINUTE ORDER of September 13, 2013

S.B. 426 will not take effect until January 1, 2014 and the law does not contain an express retroactivity provision.  "In the absence of an express retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature . . . must have intended a retroactive application."  Evangelatos v. Superior Court, 44 Cal. 3d 1188, 1209 (1988).  Here, there is no indication from extrinsic sources or the law itself that the Legislature intended S.B. 426 to apply retroactively.

Section 580b as currently written eliminates a creditor's ability to seek a deficiency judgment, but does not eliminate or extinguish the underlying debt.  Amendments to the language of section 580b have not taken effect, are not retroactive, and do not affect the current Motion.  Accordingly, Plaintiff's claim that reporting the balance owed on the second mortgage was inaccurate and in violation of the FCRA and the CCRAA because 580b extinguished the debt fails as a matter of law.

**B.    Reporting of Inaccurate or Incomplete Information**

Defendant asserts Plaintiff's "sole basis" for claiming the reporting is inaccurate under the FCRA and CCRAA is the theory that section 580b extinguishes the debt.  (Reply at 2.)  In fact, Plaintiff also claims the reporting is inaccurate because it is misleading as to the status of the debt.  (Compl. ¶ 24, Opp'n. at 13.)  Further, Plaintiff claims the reporting is incomplete because Defendant "fails to disclose it cannot obtain a judgment on the loan account."  (Compl. ¶ 25, Opp'n. at 13.)  Under this theory, Plaintiff has plead sufficient facts to support plausible claims that the reporting is inaccurate and incomplete under the FCRA and CCRAA.


Under the FCRA and CCRAA, Defendant is prohibited from furnishing information to CRAs that is inaccurate or incomplete.  15 U.S.C. § 1681s-2(b)(1); Cal. Civ. Code § 1785.25(a).  The FCRA imposes special duties on "furnishers", the sources that provide credit information to CRAs, once they receive notice of a dispute.  See Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1153 (9th Cir. 2009); 15 U.S.C. § 1681–2(b)(1).  Once a furnisher receives notice from a CRA that a consumer is disputing information in a credit report, the furnisher must conduct an investigation; review all relevant information provided by the CRA; report the results

of the investigation to the CRA; report any inaccurate or incomplete information to all other CRAs to which the person furnished information; and, modify, delete, or permanently block the reporting of any disputed item found to be inaccurate or incomplete.  15 U.S.C. § 1681s–2(b)(1).

In enacting the FCRA, "Congress clearly intended furnishers to review reports not only for inaccuracies in the information reported but also for omissions that render the reported information misleading." Gorman, 584 F.3d 1147, 1163 (9th Cir. 2009) (quoting and adopting the reasoning in Saunders v. Branch Banking & Trust Co. of Va., 526 F.3d 142, 148 (4th Cir. 2008)).  A credit entry may be incomplete or inaccurate if it is actually incorrect or if it is misleading "to such an extent that it can be expected to adversely affect credit decisions." Id. (quoting Sepulvado v. CSC Credit Servs., Inc., 158 F.3d 890, 895 (5th Cir. 1998)).  Although a report may be "technically accurate" in reflecting the consumer's failure to make payments on the loan, the report may still be inaccurate if the "statement is presented in such a way that it creates a misleading impression." Id.  (quoting and adopting the reasoning in Saunders, 526 F.3d at 148).  "A consumer's failure to pay a debt that is not really due 'does not reflect financial irresponsibility,' and thus the omission of the disputed nature of a debt could render the information sufficiently misleading so as to be 'incomplete or inaccurate' within the meaning of the statute." Id. (quoting Saunders, 526 F.3d at 150).  To hold otherwise, " would create a rule that, as a matter of law, an omission of the disputed nature of a debt never renders a report incomplete or inaccurate." Id.

The Northern District of California applied this inaccuracy standard in an unfair credit reporting case and denied a defendant's motion to dismiss. Abdelfattah, 2013 WL 495358, at *4 (N.D. Cal. 2013).  In Abdelfattah, the furnisher reported the plaintiff owed the full amount on his loan, even though the property had been sold in a Trustee's Sale and a substantial part of the loan was satisfied through the sale. Id. at *1.  The court found it is "potentially misleading" to report that the full amount of a loan is owed when in fact the debt has been decreased through a non-judicial foreclosure sale. Id. at *4.  Defendant attempts to distinguish this case from Abelfattah because here Defendant has only reported the deficiency amount, where as in Abdelfattah the furnisher reported the entire loan amount without giving any credit for the foreclosure sale.  (Reply at 3.)  Although the nature and extent of the

EDCV 13-01044-VAP (OPx)
KIANA SHANTE JOHNSON AKN KIANA SHANTE MAXWELL v. WELLS FARGO HOME MORTGAGE, INC., ET AL.
MINUTE ORDER of September 13, 2013

potential inaccuracy is different in the present case, failing to report that a debt is not subject to a deficiency judgment is also potentially misleading.  Accordingly, Plaintiff's claim that Defendant violated the FCRA and CCRAA by providing inaccurate and incomplete information to CRAs survives the Motion.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion IN PART and DISMISSES Plaintiff's first and second claims to the extent the claims are based on a theory that reporting the deficiency on the second mortgage to CRAs is prohibited by section 580b and in and of itself is a violation of the FCRA and CCRAA. The Court GRANTS Defendant's Request for Judicial Notice.  The Court DENIES Defendant's Motion in all other respects.  Plaintiff may file a first amended complaint no later than September 25, 2013.

**IT IS SO ORDERED.**